**UNION NATIONAL BANK OF CHICA-GO, a national banking association, Plaintiff-Appellant,**

v.

**Vernon WEAVER, Administrator of the Small Business Administration, and the Small Business Administration, an agency of the United States of America, Defendants-Appellees.**

No. 79–1086.

United States Court of Appeals, Seventh Circuit.

Argued June 8, 1979.

Decided Aug. 29, 1979.

Thomas G. Vent, Chicago, Ill., for plaintiff-appellant.

Thomas P. Sullivan, U.S. Atty., Nancy K. Needles, Asst. U.S. Atty., Chicago, Ill., for defendants-appellees.

Before SWYGERT, PELL and BAUER, Circuit Judges.

BAUER, Circuit Judge.

In this case, the Union National Bank of Chicago seeks to recover $211,726.86 from the Small Business Administration under a loan guaranty agreement. The district court found that the Bank had failed to perform a condition precedent to its right to demand purchase by the SBA of the guaranteed loan, and that the SBA had not waived the condition. For the following reasons, we affirm.

I

At trial, the parties stipulated to the following facts. On March 6, 1973, the Union National Bank of Chicago and the Small Business Administration executed a Loan Guaranty Agreement which provided in part:

"2. Approval of Guaranty . . . An approved loan will not be covered by this agreement until Lender shall have paid the guaranty fee for said loan as provided in paragraph 5 of this agreement.

\*     \*     \*     \*     \*     \*

5. Guaranty Fee. Within 5 days of the first disbursement on account of each loan, Lender shall pay SBA a one-time guaranty fee amounting to one percent of the total amount guaranteed by SBA . . . ."

Shortly thereafter, the SBA issued an Authorization approving the Bank's request for a guaranty of a $250,000 loan to R. L. Roth & Associates, Ltd. and ROK Construction Company. The Authorization stated that it was subject to the terms of the March 6, 1973 Guaranty Agreement, and a cover letter stated that the guaranty fee had to be paid at the time of the initial disbursement. On July 2, 1973, the Bank notified the SBA that it had made a full disbursement of the loan to R. L. Roth and Associates. The SBA subsequently acknowledged receipt of the notification, and requested copies of certain documents, including the promissory note.

Between June 14, 1973 and August 11, 1976, the Bank and the SBA exchanged several items of correspondence on the Roth loan. In none of this correspondence was any mention made by either party of the procedure for paying the guaranty fee or the consequences of delinquent payment. Finally, on January 31, 1975, the Bank mailed to the SBA a check for $2,250.00 as full payment of the required fee. The check was received by the SBA on February 3, 1975, and was routinely processed by the SBA clerical personnel. The SBA has retained the fee.

As of February 3, 1975, the date the fee was received, R. L. Roth & Associates, Inc. had failed to make timely payments of principal and interest due under the terms of its note. On July 12, 1976, the Bank made a written demand on the SBA for purchase of the guaranteed portion of the loan. The Bank was subsequently advised by SBA personnel that the guaranty had been processed for repayment and that payment would be forthcoming.

However, on January 31, 1977, the Chief of the Accounting Operations Division of the SBA issued a memorandum which stated that the SBA could not honor the Bank's demand since the Bank had not made a timely payment of the guaranty fee. The position taken in this memorandum was based on a March 13, 1975 opinion of the Comptroller General holding that the SBA could not purchase guaranteed loans if the lender failed to pay the guaranty fee before the loan went into default or before the lender had reason to believe that default was imminent. After learning that the SBA would not honor its demand for payment, the Bank filed suit to recover the guaranteed portion of the loan.

## II

Our review of the district court's decision must begin with an analysis of Paragraphs 2 and 5 of the Loan Guaranty Agreement:

"2. Approval of Guaranty . . . An approved loan will not be covered by this agreement until Lender shall have paid the guaranty fee for said loan as provided in paragraph 5 of this agreement.

\* \* \* \* \* \*

5. Guaranty Fee. Within 5 days of the first disbursement on account of each loan, Lender shall pay SBA a one-time guaranty fee amounting to one percent of the total amount guaranteed by SBA . . ."

We agree with the SBA that the central purpose of the guaranty fee is to cover administrative expenses and probable losses in connection with the loan guaranty program as a whole. We also agree that this purpose can be fully realized only if the guaranty fee is paid before the loan goes into default or before the lender has reason to believe that a default is imminent. If it were otherwise, a lender could receive the full benefit of the loan guaranty without any payment to the government for bearing the risk of loss until the need for the guaranty became evident; and, in all probability, the SBA would receive the guaranty fee payments only in those cases where the loan was in default or the prospect of default

was likely. Accordingly, it is clear that the 5-day requirement of Paragraph 5 is designed to insure that payment of the guaranty fee will be made before the loan goes into default or the lender has reason to believe that default is imminent.

■ Finding the provisions of Paragraphs 2 and 5 to be clear and unambiguous, we must conclude that the loan agreement made SBA's obligation to purchase the Roth loan conditional upon the Bank's payment of the guaranty fee within five days of the initial loan disbursement. Accordingly, since the Bank failed to make the fee payment within the 5-day period—or, indeed, before the loan went into default—the SBA was under no obligation to purchase the loan.

■ The Bank argues, however, that the SBA waived the requirement of timely payment because 1) it did not terminate the guaranty when the Bank failed to make the payment within the 5-day period, and 2) it accepted the Bank's ultimate payment of the fee. In addressing this waiver argument, the Comptroller General's opinion noted that "no officer or agent of the Government has the authority to waive contractual rights that have accrued to the U.S. or to modify existing contracts to the detriment of the Government without adequate legal consideration or a compensating benefit flowing to the Government." See *Bausch & Lomb Optical Company v. United States*, 78 Ct.Cl. 584, 607, *cert. denied*, 292 U.S. 645, 54 S.Ct. 779, 78 L.Ed. 1496 (1934). The Comptroller reasoned—and we agree—that under this principle the SBA does indeed have the authority to waive the 5-day requirement as a condition precedent *if the fee payment is made prior to default or the likelihood of default*. In such a case, the waiver does not alter the contract to the government's detriment, nor does it affect any material rights that have accrued to the government.

By contrast, however, the SBA does not have the authority to waive without adequate consideration the requirement that the fee be paid prior to default or the

likelihood of default, for, as noted above, such a waiver would frustrate the purposes of the guaranty fee provisions and thus operate to the government's detriment. It is our conclusion, therefore, that the SBA did not waive the requirement of timely payment in this case.

We have examined the Bank's other arguments and find no grounds for reversal. However, in view of our holding, we think it only equitable that the government be ordered to refund the guaranty fee paid by the bank. Accordingly, the case is remanded for this purpose only. In all other respects, the judgment of the district court is affirmed.